OPINION *Page 2 
{¶ 1} Defendant-appellant Marlington Local School District Board of Education appeals the judgment of the trial court that denied its motion for summary judgment. Plaintiffs-appellees are Jane and John Doe, the custodial parents of Holly Roe, a minor.
 STATEMENT OF FACTS AND LAW {¶ 2} Appellant provided transportation to and from school to Holly Roe, a ten (10) year old minor with special needs, and Billy Boe, a fifteen (15) year old minor with special needs.[1] For the first twelve (12) weeks of the 2004-2005 school year, Holly and Billy rode the same bus home from school. The bus that transported Holly and Billy home from school was driven by appellant's employee, Sabrina Wright. Only two other special needs students rode said bus.
 {¶ 3} In late November of 2004, Holly was reassigned to another bus so that she could stay at school longer. Thereafter, she did not ride the bus with Billy. However, later in the school year Holly's morning bus routine changed for one day, and she rode a bus to school that was driven by JoAnn Sweitzer and on which Billy was a passenger. Billy was on the bus when Holly boarded, and Billy asked if he could sit with Holly. The aide refused to allow Billy to sit with Holly, but told him he could sit in the seat next to Holly. Minutes later, the aide looked back and noticed Billy's head was not in sight. When she went to investigate, she discovered Billy slumped down next to Holly with his hand up her dress.
 {¶ 4} After separating Holly and Billy, both the aide and the bus driver spoke with Holly. Holly recounted in graphic detail things that had happened Stark County App. Case No. 2006CA00102 *Page 3 
"every day on Sabrina Wright's bus", which are as follows. During the time period during which Holly rode Wright's bus with Billy, Billy committed various sexual assaults on Holly. He inserted his fingers in her vagina and anus. He forced her to hold his penis and ejaculated into her hand. He attempted sexual intercourse. Holly reported that Billy assaulted her on the floor under the seat of the bus, and reported further that Billy threatened to harm her if she told anyone about the assaults. Ms. Wright, the bus driver, testified on deposition that she sometimes noticed the children crawling under the seats of the bus, but that she thought that the children were playing a game, such as tag.
 {¶ 5} Plaintiffs-appellees filed a complaint against appellant on September 21, 2005.[2] Appellant moved for summary judgment on February 8, 2006, on the basis of political subdivision immunity pursuant to R.C. 2744. et seq. On March 27, 2006, appellees opposed appellant's motion for summary judgment, and on March 31, 2006, the trial court denied appellant's motion without opinion. The appellant appeals the denial of summary judgment based upon R.C. 2744.02(C), which provides that "an order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order," and sets forth the following assignment of error:
 {¶ 6} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, TO THE PREJUDICE OF THE MARLINGTON LOCAL SCHOOL DISTRICT BOARD *Page 4 
OF EDUCATION, IN NOT DISMISSING ALL CLAIMS AGAINST IT ON THE GROUNDS OF OHIO REVISED CODE CHAPTER 2744, IMMUNITY."
 {¶ 7} This matter reaches us upon a denial of summary judgment. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35, 36,506 N.E.2d 212. As such we must refer to Civ.R. 56(C), which provides in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 8} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. Further, trial courts should award summary judgment with caution. "Doubts must be resolved in favor of the non-moving party." Murphy v. Reynoldsburg,65 Ohio St.3d 356, 359, 604 N.E.2d 138, 1992-Ohio-95. *Page 5 
 {¶ 9} It is pursuant to this standard that we review appellant's assignment of error.
 I {¶ 10} Appellant, in its sole assignment of error, argues that the trial court erred in denying its motion for summary judgment. We agree.
 {¶ 11} At issue in the case sub judice is whether appellant Marlington Local School District is entitled to statutory immunity under R.C. Chapter 2744. The Political Subdivision Tort Liability Act, as codified in R.C. Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability. Cater v. Cityof Cleveland, 83 Ohio St.3d 24, 28, 697 N.E.2d 610, 1998-Ohio-421.
 {¶ 12} The first tier of the analysis involves the application of R .C. 2744.02(A)(1), which states in pertinent part: "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." The parties do not dispute that appellant Marlington Local School District is a political subdivision. Further, the transportation of children is a governmental function for purposes of analysis under R.C. 2744. See, Day v.Middletown-Monroe City School District (July 17, 2000), Butler App. No. CA99-11-186, 2000 WL 979141, at 4-5.
 {¶ 13} However, the immunity afforded by R.C. 2744.02(A)(1) to a political subdivision such as appellant is not absolute, but is, by its express *Page 6 
terms, subject to five exceptions as set forth in R.C. 2744.02(B). See,Hill v. Urbana, 79 Ohio St.3d 130, 679 N.E.2d 1109, 1997-Ohio-400. Thus, the second tier of the immunity analysis involves the application of R.C. 2744.02(B), which states, in pertinent part, as follows:
 {¶ 14} "(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
 {¶ 15 } (1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. . . ." (Emphasis added).
 {¶ 16} The third tier of the immunity analysis involves reinstatement of the immunity if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies. Cater, supra, at 28.
 {¶ 17} As noted by the court in Doe v. Dayton (1999),137 Ohio App.3d 166, 738 N.E.2d 390:
 {¶ 18} "The General Assembly's enactment of R.C. 2744.02(A)(1) reflects a policy choice on the part of the state of Ohio to extend to its political subdivisions the full benefits of sovereign immunity from tort claims. Likewise, the exceptions to immunity in R.C. 2744.02(B) and the exceptions and defenses in *Page 7 
R.C. 2744.03 reflect policy choices on the state's part to submit itself to judicial relief on tort claims only with respect to the particular circumstances identified therein. Because those exceptions and defenses are in derogation of a general grant of immunity, they must be construed narrowly if the balances which have been struck by the state's policy choices are to be maintained." Id. at 169.
 {¶ 19} Appellees argue that the trial court correctly denied appellant's motion for summary judgment because the supervision and control of student passengers is an integral part of the operation of the school bus. According to appellees, Ms. Wright was negligent in her supervision and control of the student passengers, therefore she was negligent in her operation of the bus. Appellant argues that the supervision and control of student passengers falls outside the scope of "operation of a motor vehicle" as that term is used in R.C.2744.02(B)(1). We note that since the term "operation" is not defined in R.C. Chapter 2744, it must be given its plain and ordinary meaning unless the legislative intent indicates otherwise. See Howard v. MiamiTwp. Fire Dept., Montgomery App. No. 21478, 2007-Ohio-1508.
 {¶ 20} Appellees cite the case of Groves v. Dayton PublicSchools, et al. (1999), 132 Ohio App.3d 566, 725 N.E.2d 734, for the proposition that the term "operation of a motor vehicle" encompasses more than the mere act of driving the vehicle. In Groves, the school district's bus driver negligently assisted a disabled, wheelchair bound student to disembark from the school bus. The driver failed to secure the child properly before disembarking. The student's *Page 8 
hand became wedged in the wheel of her wheelchair and she suffered injuries. The Groves court stated:
 {¶ 21} "R.C. Chapter 2744 contains no definition of the term `operation of any motor vehicle.' We find the term capable of encompassing more than the mere act of driving the vehicle involved. Neither of the parties to this appeal refers us to any authority construing the term in question with regard to a driver's assisting a disabled passenger and our research in Ohio law has failed to reveal any cases on point. . . .
 {¶ 22} "Here, Groves was a passenger on a school bus equipped to transport children confined to wheelchairs, which suggests to us that it was equipped with a ramp with which to lift and lower the students in their wheelchairs as they boarded and disembarked from the bus. In addition, Dayton Public Schools had established rules and regulations pertaining to the safe boarding, transportation, and disembarking of handicapped students that required bus drivers to, inter alia, secure passengers in their wheelchairs when assisting them on or off the school bus. Thus, it can reasonably be inferred that doing so was part of the bus driver's duties and an integral part of his operation of the school bus. Furthermore, we do not exclude the possibility that the driver's operation of the ramp itself would be considered operation of the motor vehicle under the circumstances of this case." Id. at 569-570.
 {¶ 23} Whether or not we agree with the Groves court that the operation of a motor vehicle entails more than simply the act of driving, we find the Groves case to be distinguishable from the within case. In Groves, the bus *Page 9 
driver was assisting the disabled student in disembarking from the bus. Thus, according to Groves, the affirmative act of stopping the bus and assisting the student in disembarking from the bus constituted operation of the motor vehicle for purposes of the tort immunity exception. TheGroves court relied on California and Michigan case law for the proposition that stopping a school bus for the purposes of discharging passengers along with the bus drivers' duties attendant to the stopping of the bus unquestionably constitutes operation of a motor vehicle. Id. at 569 — 570.
 {¶ 24} The case sub judice is, however, distinguishable from theGroves case. In the within case, the act or omission in question involves supervision of the children while passengers on the bus. This act is distinctly different from the act of assisting students in getting on and off a bus. While supervision of students who are passengers on a bus may very well be one of the bus driver's responsibilities, it is a responsibility that is separate and distinct from that of the operation of the motor vehicle. We therefore hold that the alleged failure of the bus driver to supervise the students herein does not fall within the plain and ordinary meaning of "operation of a motor vehicle" for purposes of the tort immunity exception.
 {¶ 25} Our holding is supported by the policies underlying R.C. 2744. As set forth by the Ohio Supreme Court in Wilson v. Stark CountyDepartment of Human Services, 70 Ohio St.3d 450, 639 N.E.2d 105,1994-Ohio-394, "The policies underlying R.C. Chapter 2744 support this interpretation. R.C. Chapter 2744 was the General Assembly's response to the judicial abrogation of *Page 10 
common-law sovereign immunity. Franks v. Lopez (1994),69 Ohio St.3d 345, 347, 632 N.E.2d 502, 504. The manifest statutory purpose of R.C. Chapter 2744 is the preservation of the fiscal integrity of political subdivisions. Menefee v. Queen City Metro (1990), 49 Ohio St.3d 27,550 N.E.2d 181." Wilson at 453.
 {¶ 26} Because we find that none of the exceptions to immunity set forth in R.C. 2944.02(B) apply, we need not address whether any of the defenses contained in R.C. 2744.03 applies.
 {¶ 27} We note that appellees raised the issue of the constitutionality of the sovereign immunity statute in their brief in opposition to appellant's motion for summary judgment.3 In addition, the appellees raised the constitutionality issue in their appellate brief. This argument is not well taken, as the appellees failed to comply with the procedures set forth by R.C. 2721.12 necessary to attack the constitutionality of a statute. First, appellees did not assert that R.C. 2744 was unconstitutional in their complaint or their amended complaint as required by the statute. Second, appellees did not serve the attorney general with a copy of the complaint as required by the statute. Even if these procedural requirements had been met, the appellees' constitutional argument still must fail. As set forth by this Court in Eischen v. Stark County Board of Commissioners, Stark App. No. 2002CA00090, 2002-Ohio-7005, appeal not allowed by 98 Ohio St.3d 1539,2003-Ohio-1946, 786 N.E.2d 901: "[d]espite the provocative language used by Justice Douglas in Butler [v. Jordan, 92 Ohio St.3d 354], the law of Ohio remains that R.C. Chapter 2744 is constitutional. The Supreme Court of Ohio addressed this issue in Fabrey v. McDonald PoliceDepartment, 70[3] The trial court did not address the constitutionality issue in its March 31, 2006, judgment entry.11 Ohio St.3d 351, 639 N.E.2d 31, 1994-Ohio-368, and Fahnbulleh v.Straham, 73 Ohio St.3d 666, 653 N.E.2d 1186, 1995-Ohio-295."Eischen ¶ 20.
 {¶ 28} The appellant's sole assignment of error is sustained, and the judgment of the trial court is hereby reversed.
Edwards, J., Wise, P.J. concur.
Hoffman, J. dissents.
[1] The parties involved herein have been identified by fictional names.
[2] Appellees later moved for, and were granted, leave to amend their complaint to assert claims against individual Marlington employees. The causes of action against said individuals have been stayed pending the outcome of the within appeal.
[3] The trial court did not address the constitutionality issue in its March 31, 2006, judgment entry. *Page 12